IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Crim No. 96-00085-03-CR-W-FJG |
| | ) | |
| DARLENE EDWARDS, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

Currently pending before the court is defendant's Motion for Reduction in Sentence and Compassionate Release (Doc. # 577), Motion for Disclosure of Pre-Sentence Investigation Report (Doc. # 580), Motion for Hearing on Petitioner's Motion for Expedited Hearing (Doc. # 582) and Motion for Hearing on Petitioner's Motion for Reduction in Sentence and Compassionate Release (Doc. # 586). On August 28, 2020, the Court held a hearing regarding Edwards' Motions.

## I. BACKGROUND

Darlene Edwards is currently serving a life sentence without the possibility of parole. On February 26, 1997, Edwards, along with four other individuals was convicted of aiding and abetting an act of arson which resulted in the deaths of six Kansas City, Missouri firefighters. Edward's sentence was imposed on July 2, 1997. Edwards appealed her sentence to the Eighth Circuit, which affirmed her conviction on October 30, 1998. Edwards filed a petition for a writ of certiorari in the United States Supreme Court which was denied. Edwards filed a 28 U.S.C. § 2255 motion on September 28,

2000. That motion was denied on July 11, 2003. Edwards appealed, but the Eighth Circuit denied her a certificate of appealability on January 5, 2004.

## II. DISCUSSION

**A. Motion to Reduce Sentence Pursuant to 18 U.S.C. §3582 (c)(1)(A)(i)**

Darlene Edwards moves the Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), to reduce her sentence to time served. The compassionate release statute as amended by the First Step Act, allows courts to reduce sentences for "extraordinary and compelling" reasons. Edwards argues that the COVID-19 pandemic is an extraordinary and compelling reason along with her age and serious underlying health issues that warrant the reduction in her sentence to time served.

**B. Standard**

As amended by the First Step Act, 18 U.S.C. § 3582§(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that-in any case-the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

2

### C. Exhaustion

As noted above, a Court must first consider whether a defendant "has fully exhausted his administrative rights before a court may consider a sentence reduction request. On April 22, 2019, Edwards submitted a pro se request for compassionate release to the Warden at FMC Carswell. That request was denied on May 15, 2019 based on a finding that defendant did not meet the BOP criteria for a medical release. Edwards did not appeal the BOP's finding. Ms. Edwards submitted a second request for compassionate release to the Warden on May 12, 2020. The BOP denied this request on May 19, 2020. The Court finds that Edwards exhausted her thirty-day waiting period as of June 11, 2020.

### D. Extraordinary and Compelling Reasons

The U.S.S.C defines "extraordinary and compelling" in Application Note 1 of U.S.S.G. §1B1.13 and states "that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances." U.S.S.G. § 1B1.13, n.1 (A)-(C). "During the COVID-19 pandemic, 'courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his [or her] prison facility." United States v.Feiling, No. 3:19cr112(DJN), 2020 WL 1821457, *7,(E.D.Va. Apr. 10, 2020). The Government had initially argued that Edwards' health conditions did not present extraordinary and compelling reasons to qualify her for compassionate release. However, in a supplemental filing on August 20, 2020, the Government now concedes that based on revised guidance from the Department of Justice, Edwards' obesity and diabetes qualify as extraordinary and compelling reasons

3

due to the CDC's recognition of the risks posed by the COVID-19 coronavirus to individuals with those conditions. As the Government has now conceded that plaintiff's health conditions constitute extraordinary and compelling reasons to qualify for compassionate release, the Court will proceed to analyze the other factors which it must consider.

**E. Whether Defendant poses a Danger to Community – 18 U.S.C. § 3142(g).**

The Government argues that the defendant's motion cannot be granted because she continues to pose a danger to the community. In considering this factor, courts examine: 1) the nature and circumstances of the offense; 2) the weight of the evidence against the defendant; 3) history and characteristics of the defendant – character, physical and mental condition, family and community ties, past conduct, history of drug or alcohol abuse and criminal history; 4) nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

**1) Nature and Circumstances of the Offense**

The Eighth Circuit Court of Appeals summarized the circumstances of the offense in their opinion:

> Early in the morning on November 29, 1988, two Kansas City Fire Department pumpers arrived to fight two fires at a highway construction site in southeast Kansas City. The first pumper extinguished a burning pickup truck on the west side of the site and joined the second pumper on the east side, where an aluminum storage trailer containing 25,000 pounds of explosives was on fire. The trailer exploded, instantly killing six firefighters and igniting a second trailer filled with 30,000 pounds of explosives, which also exploded. Over seven years later, Darlene Edwards, Richard Brown, Earl (Skip) Sheppard, Bryan Sheppard, and Frank Sheppard were indicted and convicted of the capital offense of aiding and abetting arson that caused the deaths of the firefighters. . . . The highway construction site was patrolled by two security guards. At 3:15 a.m., one guard thought she saw two people walking down the highway. The guards looked for trespassers, leaving one of their vehicles,

4

a pickup truck, parked on the west side. They drove to a nearby
convenience store, the Quik Trip, and learned the store manager had not
seen anyone. As the guards were leaving the store, a car pulled up and
the driver yelled there was a fire at the construction site. The guards
returned and reported their pickup truck was on fire and a second fire
could be seen on the east side. At 4:08 a.m., the first trailer exploded,
killing the six firefighters. Investigators concluded the pickup truck fire
started when gasoline was poured into the driver's side of the cab and
ignited, and the trailer fire began in the tire area and became so hot that
the walls of the trailer ignited and caused the ANFO explosives to explode.
The investigation into who caused the fires was frustrated by a lack of
witnesses and surviving physical evidence. After years of dead ends, the
explosions were reenacted on a national television program, *Unsolved
Mysteries,* accompanied by a well-publicized $50,000 reward, extensive
local publicity, and a phone number for reporting tips. Defendants lived in
Marlborough, a neighborhood adjacent to the construction site. Frank and
Skip Sheppard are brothers, Bryan Sheppard is their nephew, Richard
Brown is Bryan Sheppard's best friend, and Darlene Edwards was living
with Frank Sheppard at the time of the explosion. Many callers reported
that defendants had repeatedly boasted of starting the fires. These
indictments followed.

United States v. Edwards, 159 F.3d 1117, 1121–22 (8th Cir. 1998)

**2) Weight of the Evidence Against the Defendant**

In the Eighth Circuit's opinion, they considered the sufficiency of the evidence.

The Eighth Circuit stated:

The government's evidence at trial included Darlene Edwards's 1995 tape-
recorded statement. Edwards told investigators that sometime between
1:30 and 2:30 a.m. Bryan Sheppard came to her house and asked if she
would take Bryan and Richard Brown to get gas because their car had run
out. Leaving Frank Sheppard asleep, Edwards drove Bryan and Brown to
the nearby Quik Trip where they filled a gas can. They told Edwards their
car was near the construction site, but when she neared the site her
companions explained they planned to set a fire with the gasoline to divert
security guards while they stole from the site. Edwards refused to go with
them but agreed to drop them off. Over defense objections, the district
court admitted a redacted version of this statement against Edwards.
Additional evidence against her included three inmates who testified that
Edwards told them, while she was incarcerated with them on other
charges, that she and others had planned to steal tools and equipment
from the construction site to sell or trade for drugs, and that she had

5

driven the others to get gas to start a diversionary fire and cover up the thefts.

Id. at 1122. The Eighth Circuit also rejected the defendants' argument that the case lacked corroborating evidence. The Eighth Circuit noted:

> Becky Edwards, Darlene's daughter, testified that she heard all five defendants planning to steal from the construction site about one week before the explosion. Investigators found a gas can on the site that did not belong to the construction contractors, and a witness testified that Frank and Skip Sheppard had many gas cans as part of their lawn mowing business. A number of witnesses saw the defendants in various groups in the Marlborough neighborhood before and after the explosions. One saw Richard Brown's car driving at high speed a short distance from the construction site three to five minutes after the first trailer exploded. Another saw Frank and Skip Sheppard and two others pull up to their mother's house near the construction site five to ten minutes after the explosion. Another saw Bryan Sheppard and Richard Brown around 7:30 a.m., after the explosion; Bryan smelled of gasoline and smoke and had numerous scratches and abrasions. Taken as a whole, the evidence tends to establish the trustworthiness of defendants' many admissions.

Id. at 1123.

### 3) History and Characteristics of the Defendant

The Presentence Investigation report revealed that Edwards became involved with Frank Sheppard around 1982. Edwards' mother felt that Sheppard was a "negative influence on her daughter, encouraged her to use drugs, and physically abused her on numerous occasions. Furthermore, despite [Edwards] efforts to break away from Sheppard, he continued to intimidate and mistreat her. Edwards reported being frequently assaulted by Frank Sheppard during their relationship. The presentence investigation report also notes some substance abuse when Edwards was in her 30's. She had been able to successfully stop using cocaine for six years, but was reintroduced to it by Sheppard in 1994 and used it up until her arrest in February 1995. While in prison, Edwards argues that she has taken advantage of the educational and

6

Case 4:96-cr-00085-FJG   Document 597   Filed 09/04/20   Page 6 of 10

occupational opportunities offered to inmates. She states that she has completed 125 courses while in prison, ranging from art and recreation courses to courses on employment skills and personal growth.  Additionally, she secured employment and has held numerous jobs while in prison, working as a call center agent and as a payroll and supply clerk.

**4) Nature and Seriousness of the Danger to any Person or the Community Posed by Defendants' Release**

Defendant argues that she is not a danger to the community, as she is a 66-year old obese diabetic who requires assistance walking and has spent the last 23 years in prison.

After consideration of the above noted factors, the Court agrees and finds that Edwards would not pose a danger to the community if her motion for compassionate release were granted.

### F. Factors in 18 U.S.C. §3553(a)

The factors which the Court must also consider in deciding the motion for compassionate release include:

1. Nature and circumstances of the offense and the history and characteristics of the defendant.

2. The need for the sentence imposed –
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. The kinds of sentences available;

4. The kinds of sentence and the sentencing range established for –

> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

5. Any pertinent policy statement –
   . . .

6. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Edwards argues that the twenty-three years that she has already served is sufficient to satisfy the purposes of sentencing. Edwards argues that even the most serious offense does not warrant exposure to a life-threatening illness. Edwards argues that the passage of time, her advanced age and medical condition, the current COVID-19 pandemic and her attempts to better herself and pay restitution while in prison demonstrate that her motion should be granted.

The Government argues that nothing about the COVID-19 pandemic has changed the defendant's history from the time of her sentencing and she has failed to demonstrate that the factors the Court considered at the time of detention or the § 3553(a) factors the court considered at the time of sentencing have changed. The Government argues that the impact of her crime is still felt by the families of the firefighters and the community and Edwards' life sentence reflects the seriousness of the offense and the current health crisis does not diminish that impact. The Government notes that the families of numerous victims have expressed their objections to any reduction of Edwards' sentence and their belief that she should remain in custody.

There is some overlap between the 18 U.S.C. § 3142(g) factors and the § 3553(a) factors. As noted above, the Court has already considered and discussed the nature and circumstances of the offense and the history and characteristics of the

defendant. The Court finds that the remaining factors - seriousness of the offense, respect for the law, just punishment and adequate deterrence, all weigh in favor of denying Edwards' Motion for Compassionate Release.

In United States v. Logan, No. 1:96-CR-20-TBR, 2020 WL 730879 (W.D.Ken., Feb. 13, 2020), defendant was found guilty of arson resulting in death and injuries and received a life sentence. Defendant was paid to start a fire at a hotel where he worked, so that owner could collect insurance money. The fire killed four people and injured fifteen others. The defendant sought compassionate release based on the fact that he was over 77 years old, had a history of prostate cancer in remission, glaucoma, visual impairment, Type 2 diabetes, chronic kidney disease, degenerative arthritis, and several other medical conditions. The Court found that the first two §3553(a) factors weighed heavily against granting the motion. Although the defendant had served twenty-two years of his life sentence and suffered from serious health conditions, the Court found that reducing his sentence would minimize the nature and seriousness of the offense and would be unjust in light of the four individuals who lost their lives due to defendant's actions.

In this case Edwards argues that she has spent the last twenty-three years in prison productively and peacefully working and completing numerous classes and programs. She states that she has never been in serious trouble during her time in prison and has never been cited for fighting, drug use, alcohol or any other serious offense. Edwards states that "[t]wenty-three years is a serious sentence that satisfies the goals of promoting respect for the law, providing just punishment, deterring criminal conduct, and protecting the public." (Reply to Supplemental Opposition, p. 4). The

9

Court disagrees and finds that the 18 U.S.C. § 3142(g) factors and the § 3553(a) factors do not justify granting Edwards' Motion for Compassionate Release, the COVID-19 pandemic nothwithstanding. The Court commends the steps that Edwards has taken toward rehabilitation and self-improvement while in prison and her efforts to make payments toward the restitution assessment. But, the arson that Edwards was convicted of aiding and abetting took the lives of six firefighters when the trailer exploded and instantly killed the firefighters. Edwards' crime had a profound affect on this community and forever altered the lives of the fire fighters' families. So, while Edwards has shown that her deteriorating health and the COVID-19 pandemic are extraordinary and compelling circumstances, when weighed against the §3124(g) and §3553(a) factors, they do not justify granting Edwards' motion for compassionate release.

### III. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **DENIES** defendant's Motion for Reduction in Sentence and Compassionate Release (Doc. # 577), **DENIES** defendants' Motion for Disclosure of Pre-Sentence Investigation Report (Doc. # 580), **GRANTS** defendant's Motion for Hearing on Petitioner's Motion for Expedited Hearing (Doc. # 582) and **GRANTS** defendant's Motion for Hearing on Petitioner's Motion for Reduction in Sentence and Compassionate Release (Doc. # 586).

Date: <u>September 4, 2020</u>         **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri         Fernando J. Gaitan, Jr.
       United States District Judge

10

Case 4:96-cr-00085-FJG   Document 597   Filed 09/04/20   Page 10 of 10